UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NORTHBRIDGE GENERAL INSURANCE CORPORATION,<br><br>Plaintiff,<br>v.<br><br>PHASE II TRANSPORTATION INC et al.,<br><br>Defendants. | CASE NO. 3:24-cv-05033-DGE<br><br>ORDER DENYING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DKT. NO. 37) |

## I     INTRODUCTION

Before the Court is Plaintiff's Motion for Leave to File Third Amended Complaint ("TAC") (Dkt. No. 37) and Defendant's Opposition (Dkt. No. 39). For the reasons that follow, the Motion for Leave to File a Third Amended Complaint is DENIED.

## II     BACKGROUND

This case arises from a fire that destroyed a refrigerated shipping container carrying black currants while it was held in Tacoma, Washington. (*See* Dkt. No. 37 at 1.) The fire occurred on or around November 27, 2022. (Dkt. No. 1-2 at 4). This action was initially filed in the Pierce

County Superior Court, and later removed to this Court.  (*See* Dkt. No. 1.)  In the initial complaint, filed on December 4, 2023, Plaintiff AlexIngredients, Inc. sued CMA CGM (America), LLC, which it alleged was the "supplier and/or manufacturer of the refrigerated container involved in the incident." (Dkt. No. 1-2 at 2–3, 8.)  In January 2024, counsel for CMA CGM (America) represented to Plaintiff that CMA CGM (America) had "absolutely nothing to do with carriage of the black currents or the container that was used." (Dkt. No. 38-1 at 24.)  Instead, counsel represented to Plaintiff that CMA CGM SA, a corporation based in Marseille, France, was the party "to whom your allegations seem to be directed," and agreed to accept service for CMA CGM SA if it were substituted for CMA CGM (America). (Dkt. Nos. 38-1 at 24, 39 at 2).

Following that exchange, the parties agreed to a stipulation and order allowing Plaintiff to file a Second Amended Complaint, dismissing CMA CGM (America) as a defendant, and adding CMA CGM SA in its place, which this Court granted.  (*See* Dkt. Nos. 17, 18.)  In the instant motion, Plaintiff seeks to re-add CMA CGM (America) to the litigation because it has "received conflicting information from the same counsel regarding the roles of CMA CGM (America) LLC in the subject cargo shipment" and has "new information received from CMA regarding lack of ownership" of the container.  (Dkt. No. 37 at 4.)  Plaintiff argues that "[t]he interests of justice will be served by granting leave to amend" to add CMA CGM (America) because it "may own the subject container at issue, and new facts related to CMA CGM (America) LLC may have been bearing on this litigation." (*Id.* at 5.)  Defendant CMA CGM SA argues that Plaintiff's motion "is based on a misunderstanding of CMA CGM (America)'s place in the global transportation chain." (Dkt. No. 39 at 1.)  According to Defendant, "CMA CGM (America) is

ORDER DENYING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DKT. NO. 37) - 2

merely the United States Agent for CMA CGM SA and, therefore, has no liability as the agent for a disclosed principal." (*Id.*)

### III   DISCUSSION

**A. Legal Standard**

Under Fed. R. Civ. P. 15(a)(2), a third amendment to a party's pleading requires "the opposing party's written consent or the court's leave." When the Court is involved, it "should freely give leave when justice so requires." *Id.* While Rule 15(a)'s standard has been described as "very liberal," the Ninth Circuit has recognized that "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Defendant does not allege prejudice, bad faith, or delay, but argues that the amendment would be futile because CMA CGM (America) has engaged in "none of the[] activities" that would give rise to liability. (*See* Dkt. No. 39 at 4.) As Defendant notes, "[l]eave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989); *see also Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 739 (S.D. Cal. 2020) ("Futility of amendment is analyzed much like a Rule 12(b)(6) motion to dismiss—an amended complaint is futile when it would be subject to dismissal."). (Dkt. No. 39 at 3.) As such, the Court considers the legal standard for a motion to dismiss, under which a plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B. Based on Facts Currently Identified, Plaintiff's Proposed Amendment Is Futile**

The proposed amended complaint is futile because Plaintiff has not proffered a factual basis to plausibly establish CMA CGM (America)'s liability.

1. <u>Plaintiff's Evidence as to CMA CGM (America)'s Liability Does Not Plausibly Support Its Position</u>

The evidence Plaintiff affirmatively offers does not support its position. Plaintiff states it received "numerous invoices issued by CMA CGM (America) LLC to AlexIngredients Inc.," but as discussed below, that evidence is consistent with the contention that CMA CGM (America) acted as an agent for CMA CGM SA. (*See* Dkt. No. 37 at 3). Plaintiff also offers a photograph as evidence of CMA CGM (America)'s ownership of the container, and states that "[t]he subject container has 'CMA' clearly printed on its side as shown on the photo produced by CMA." (Dkt. No. 37 at 3.) Plaintiff's counsel repeats that claim in its sworn declaration (Dkt. No. 38 at 2.) But confusingly, the photo in Plaintiff's own Exhibit 5 does *not* clearly show "CMA" on the side of the container, it shows "CAI"—which is consistent with Defendant's assertion that CMA CGM SA leased the container from CAI International[1]:

---

[1] Defendant provided a link to a site that it claimed would establish the ownership of the container, https://www.bic-code.org/. (*See* Dkt. No. 39 at 3.) The identifying number for the container is CAIU5563992. (Dkt. No. 41 at 2.) Plaintiff is correct in stating that the BIC website, at least the publicly available version of it, "only provides options for searching the first three letters of a container registration number (a prefix), and not the actual container number." (*Id.*) But the "CAIU" prefix indicates ownership by CAI (*see* CAIU - Intermodal Container Details - bic-code.org), which no longer appears in dispute. (*Compare* Dkt. No 41 at 1–2, 39 at 3.)

ORDER DENYING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DKT. NO. 37) - 4



(Dkt. Nos. 38-1 at 34, 39 at 3.)

Given the opportunity in its reply and accompanying declaration to explain the significant discrepancy between its claim and the evidence it produced, Plaintiff made little effort to do so, stating that it had not been made aware of CAI's ownership of the container prior to filing the motion. (*See* Dkt. Nos. 41 at 1, 42 at 1–2.) Still, that does not explain how or why Plaintiff mischaracterized its own exhibit.[2]

> 2. <u>Plaintiff Has Not Offered Plausible Evidence of CMA CGM (America)'s Own Negligence, Nor Explained How Liability Would Otherwise Attach</u>

The information offered in the record thus far supports a finding that CMA CGM (America) acted as an agent for a disclosed principal—CMA CGM SA—and as such is

---

[2] The Court reminds counsel of its duty of candor, especially in a sworn declaration.

ORDER DENYING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DKT. NO. 37) - 5

contractually liable only for its own negligence, not that of the principal.  Under traditional principles of agency law, "[w]hen an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise."  Restatement (Third) Of Agency § 6.01 (Am. L. Inst. 2006).  Washington courts have adopted this rule.  *See e.g.*, *Annechino v. Worthy*, 290 P.3d 126, 130 (Wash. 2012) (en banc); *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 430 P.2d 600, 604 (Wash. 1967) ("when an agent makes a contract on behalf of a disclosed or partially disclosed principal whom he has power to bind, he does not thereby become liable for his principal's nonperformance").

As previously noted, Plaintiff discussed invoices from CMA CGM (America) in its motion (*see* Dkt. No. 37 at 3) but did not provide an example.  Defendant did offer an example of an invoice from CMA CGM (America), which states (on the bottom lefthand corner) that it was acting "For and on behalf of CMA – CGM" – at its Marseille, France address. (Dkt. No. 40-1 at 1.)  Commentary to the Restatement specifically states that when both a principal and agent are named in a contract, and the principal's name is set off by a phrase such as "on behalf of," the agent is not party to the contract absent a manifestation to the contrary.  *See* Restatement (Third) Of Agency § 6.01 cmt. (d)(1).

CMA CGM (America)'s apparent status as an agent, however, does not alone resolve the question of whether it is a proper party in this litigation.  An agent remains liable in tort to a third party for *its own* negligence.  *See* Restatement (Third) of Agency § 7.01; *Annechino,* 290 P.3d at 130.  Thus, if CMA CGM (America) were responsible for inspection and maintenance of the refrigerated container unit, that would be a basis for liability.  But here again, Plaintiff has not

offered evidence to support its position.  In its reply, Plaintiff states that it has not received maintenance logs from CMA CGM SA, but that CMA CGM SA produced a "Shift Monitor Report/Equipment Find List" covering dates in November[3]—which provides at least some evidence that CMA CGM SA was involved in on-the-ground monitoring of the container, but no clear support for the assertion that CMA CGM (America) was responsible for maintaining the container.[4]  (*See* Dkt. No 41 at 3–4.)  For its part, Defendant asserts that CMA CGM (America) "has conducted no operations with respect to the container at issue other than issuing an invoice." (Dkt. No. 39 at 4.)  CMA CGM (America) "was not involved in the lease or supply of the container; was not involved in the purchase and sale of the container; and was not involved in any maintenance, inspection, or repair of the container." (*Id.*)

Another means by which liability would extend to CMA CGM (America) is if it were imposed by statute, but Plaintiff has not adequately explained its statutory theories as to CMA CGM (America).  Plaintiff seeks to assert claims against CMA CGM (America) under the Washington Products Liability Act ("WPLA") and the Consumer Protection Act. (*See* Dkt. No. 38-1 at 7–10.)  Under the WPLA, a "manufacturer" is subject to strict liability.[5]  *See* Wash. Rev.

---

[3] Plaintiff's motion references "November 22, 2024 (Day and Night), November 23, 2024 (Day and Night), November 24, 2024 (Holiday) and November 25, 2024 (Day)." (Dkt. No. 41 at 3–4.). Because those dates have not yet occurred as of this writing, and the incident at issue took place in November 2022, the Court assumes the year "2024" is written in error.

[4] Plaintiff also notes that CMA CGM (America) employees signed discovery responses and declarations from CMA CGM SA (*see* Dkt. No. 41 at 4), but that post-facto litigation preparation has no bearing on the question of which entity was responsible for maintaining the container at the time of the incident in question.

[5] "Manufacturer" is defined as "a product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale to a user or consumer. The term also includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer." Wash. Rev. Code § 7.72.010.  The definition further provides that "[a] product seller acting primarily as a wholesaler, distributor, or retailer of a product may be a "manufacturer" but only to the extent that it designs, produces, makes, fabricates, constructs, or remanufactures the product for its sale." *Id.*

ORDER DENYING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DKT. NO. 37) - 7

Code § 7.72.030.  A "product seller" is typically subject to liability for negligence, unless certain statutory criteria are met under which a manufacturer's liability can be imputed to the "product seller."[6]  Wash Rev. Code § 7.72.040.  Plaintiff asserts that CMA CGM (America) has imputed manufacturer liability because "the shipping container and equipment in question were marketed under a trade or brand name of Defendant CMA (America)."[7]  (Dkt. No. 38-1 at 9, 20.)  Even assuming that to be true, however, Plaintiff does not explain how either CMA CGM (America) or CMA CGM SA fit the definition of "manufacturer," given Plaintiff's apparent acknowledgement that CMA CGM SA did not manufacture the shipping container. (*See* Dkt. No. 41 at 2) (discussing CMA CGM SA's purchase of the container from CAI International).  Moreover, "the claimant bears the burden of establishing the statutory elements set out in RCW 7.72.040(2)." *Coyne v. Chin 2 Corp*, 28 Wash.App.2d 1004, 2023 WL 5551198 at *4 (Wash. Ct. App. Aug. 29, 2023).  Even if CMA CGM (America) were subject to liability for negligence as "product seller," Plaintiff has not provided plausible evidence of its negligence either, as described above.[8]

---

[6] "Product seller" is defined as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption. The term includes a manufacturer, wholesaler, distributor, or retailer of the relevant product. The term also includes a party who is in the business of leasing or bailing such products." Wash. Rev. Code § 7.72.010(1).

[7] Plaintiff is apparently referencing Washington Revised Code § 7.72.040(2)(e), which imposes manufacturer liability where "[t]he product was marketed under a trade name or brand name of the product seller," but it cites "7.72.040(4)," a section of code that does not appear to exist. (Dkt. No. 38-1 at 9.)  Curiously, Plaintiff does not mention liability under Washington Revised Code § 7.72.040(2)(c), which applies when "[t]he product seller is a controlled subsidiary of the manufacturer."

[8] Plaintiff likewise does not explain how liability extends to CMA CGA (America) under the Consumer Protection Act.

Without any affirmative evidence that CMA CGM (America) was responsible for maintaining the container at issue or is otherwise liable, Plaintiff instead faults Defendant for failing to prove a dizzying string of negatives: "Because neither CMA CGM SA nor CMA CGM (America) LLC have not produced any documents showing they are not responsible for leasing, supplying, inspecting, maintaining, and/or repairing of the subject shipping container, the proposed causes of action against CMA CGM (America) LLC are not futile." (Dkt. No. 41 at 4.) But even at this early stage of litigation, Plaintiff must do more than state Defendant has failed to *disprove* its claims, it must offer at least some facts that tend to show they are "plausible." *Twombly*, 550 U.S. at 570.

## IV    CONCLUSION

In the ordinary course, motions for leave to amend are "freely give[n]." Fed. R. Civ. P. 15(a)(2). This case however presents unique circumstances. A party that previously obtained leave to dismiss an opposing party from this suit now seeks leave to add that party back. That would be appropriate if new information revealed that the dismissed party was in fact a proper party to the suit and was dismissed in error, but Plaintiff has failed to make such a showing. Rather, the information it offers in support of its motion is self-contradictory, and the Court agrees with Defendant that allowing the amendment would be "futile" at this time. The Court is mindful that discovery is still ongoing and future developments could provide greater support for the amendment Plaintiff is seeking. Further, Plaintiff is not without redress, as CMA CGM SA remains party to the suit. But based on the information before the Court at this juncture, the motion for leave to file an amended complaint (Dkt. No. 37) is DENIED.

Dated this 3rd day of September 2024.

David G. Estudillo
United States District Judge

ORDER DENYING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DKT. NO. 37) - 10